IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| CATHERINE A. SCHAEFER, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | C/A No. 3:18-cv-02775-MBS |
| | ) | |
| v. | ) | |
| | ) | |
| FAMILY MEDICINE CENTERS | ) | **OPINION AND ORDER** |
| OF SOUTH CAROLINA, LLC, | ) | |
| STEPHEN F. SERBIN, M.D., | ) | |
| PETER J. STAHL, M.D., | ) | |
| BHAVESH R. AMIN, M.D., | ) | |
| SPRINGWOOD LAKE PRIMARY CARE, LLC, | ) | |
| SPRINGWOOD LAKE BUILDING, LLC, | ) | |
| SOUTHEAST PROFESSIONAL PLAZA, LLC, | ) | |
| MIDTOWN BUILDING, LLC, | ) | |
| SALUDA POINTE BUILDING, LLC, and | ) | |
| LAKE MURRAY FAMILY | ) | |
| MEDICINE BUILDING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Catherine A. Schaefer, M.D. ("Plaintiff") brought the within action against

Defendants Family Medicine Centers of South Carolina, LLC ("FMC"); Stephen F. Serbin, M.D.

("Defendant Serbin"); Peter J. Stahl, M.D. ("Defendant Stahl"); Bhavesh R. Amin, M.D.

("Defendant Amin"); Springwood Lake Primary Care, LLC; Springwood Lake Building, LLC;

Southeast Professional Plaza, LLC; Midtown Building, LLC; Saluda Point Building, LLC; and

Lake Murray Family Medicine Building, LLC in the Court of Common Pleas for Richland

County, South Carolina.[1]  The action was removed to this court on October 12, 2018.  Plaintiff

asserts claims for fraudulent inducement, tortious interference with contract, and civil conspiracy

---

[1] The complaint named an additional sixteen defendants who have since been dismissed pursuant
to Federal Rule of Civil Procedure 41.

relating to a settlement agreement she entered into with FMC and the United States government in 2014 to settle claims arising under the False Claims Act.

This matter is before the court on the motion to dismiss filed by Defendants Serbin, Stahl, FMC, Lake Murray Family Medicine Building, LLC, Midtown Building, LLC, Saluda Pointe Building, LLC, Southeast Professional Plaza, LLC, Springwood Lake Building, LLC, and Springwood Lake Primary Care, LLC (hereinafter, "Defendants"). ECF No. 16. The motion seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(7). *Id.* Plaintiff filed an opposition to Defendants' motion on October 25, 2018, ECF No. 32, to which Defendants filed a reply on November 1, 2018. ECF No. 33.[2] The court held oral argument on the motion on February 12, 2019, and took the matter under advisement. The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1355.

## I. BACKGROUND

### The FCA Action

On February 12, 2014, Plaintiff filed a qui tam action under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, on behalf of the United States against Victoria Serbin and Defendants FMC, Serbin, and Stahl, styled *United States ex rel. Schaefer v. Family Medicine Centers of South Carolina, LLC*, 3:14-cv-00382 (D.S.C. Feb. 12, 2014) (the "FCA Action"). ECF No. 4-2. Defendant Serbin and Defendant Stahl are founders, owners, and members of FMC. Victoria Serbin, Defendant Serbin's wife, was an employee of FMC and held multiple management positions there, including Laboratory Director and Director of Clinical Ancillary Services. ECF No. 4-5 at 2. The FCA action was based on Plaintiff's employment with FMC

---

[2] Defendant Amin has not responded to the complaint, and the court entered default as to him on Novemebr 20, 2018. ECF No. 52.

between April 2013 and November 2013, during which time Plaintiff alleged she "personally witnessed" FMC's scheme to defraud Medicare and Tricare "by overcharging federal health insurance programs for amounts exceeding the actual value of services provided to federally-insured patients." ECF No. 1-1 at ¶ 36. Plaintiff also alleged that Defendant Serbin wrongfully terminated her employment "when she objected to FMC's fraudulent practices." *Id.*

On May 5, 2016, the United States filed a complaint in intervention alleging that FMC, Defendant Serbin, and Victoria Serbin, (collectively, "Serbin Defendants") submitted false claims to Medicare, Tricare, and the Federal Employees Health Benefits Program. ECF No. 4-3. The United States further alleged as follows. The Serbin Defendants had employment arrangements with physicians that included "compensation directly attributable to the volume or value of the employed physician's referrals." *Id.* at 3. The Serbin Defendants violated the FCA and the Stark Law, 42 U.S.C. § 1395nn, "[b]y knowingly submitting, and causing to be submitted, claims for reimbursement based on referrals generated by physicians who received compensation based on these terms." *Id.* Additionally, in order to maximize revenue, the Serbin Defendants devised a variety of schemes, including: "creating custom laboratory panels comprised of diagnostic tests not appropriate for routine measurement"; "implementing standing orders to assure [] custom panels were performed with defined frequency," rather than in reaction to clinical needs; programming billing software to generate inaccurate codes so as to misrepresent services provided; ordering unnecessary laboratory tests; and billing for office visits when a patient presented for a simple blood-drawing procedure. *Id.* at 3-4. Plaintiff subsequently filed an amended complaint to preserve her employment retaliation claim under 31 U.S.C. § 3730(h) of the FCA, which entitled her to recover two times the back pay from the date of her discharge plus interest, special damages, costs, and attorneys' fees. ECF No. 4-4.

The Serbin Defendants filed a motion to dismiss, which the court denied. *United States v. Family Medicine Centers of South Carolina, LLC*, 3:14-cv-00382, 2016 WL 6601017 (D.S.C. Nov. 8, 2016). The United States thereafter filed a joint stipulation of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), citing in relevant part a settlement agreement executed on September 11, 2017 between the United States, Plaintiff, and FMC ("Settlement Agreement"). *United States v. Family Medicine Centers of South Carolina, LLC*, 3:14-cv-00382 at ECF No. 114.

<u>The Settlement Agreement</u>

Plaintiff asserts that in April 2016, FMC offered a lump sum settlement, to which the United States responded with a counter offer. ECF No. 1-1 at ¶ 42. On October 24, 2016, FMC proposed a counteroffer of $1.5 million to be paid over five years in monthly installments of $25,000. Plaintiff asserts, "FMC claimed its settlement offer was based solely on ability to pay and that FMC no longer had the ability to make the lump sum payment offered in April 2016 because its business had declined since the United States' intervention." *Id.* at ¶ 43. Also, "[o]n March 9, 2017, FMC told the United States that banks were declining to extend lines of credit because of concerns with the 'delay' in reaching a settlement and that four employees were being laid off." *Id.* at ¶ 44. The United States thereafter proposed settlement substantially similar to FMC's October 2016 counteroffer, and, on August 2, 2017, the United States and FMC agreed to the settlement. *Id.* at ¶¶ 45, 46. Plaintiff asserts "FMC claimed it was unable to pay anything to compensate [her] for her employment retaliation claim beyond the monies [she] would receive from the statutory whistleblower reward paid from the government's recovery." ECF No. 1-1 at ¶ 47. Accordingly, "[b]ased on the representations made by FMC to the United States

government and the United States' agreement to an 'ability to pay' settlement, Dr. Schaefer

agreed to join the proposed settlement." *Id.* at ¶ 48.

On September 11, 2017, the United States, Plaintiff, and FMC executed the Settlement

Agreement, "which resolved the FCA Action for $1,560,000, plus accrued interest at a rate of

2.375 percent, to be paid over five years in monthly installments of $10,000[,] plus interest for

the first year, followed by monthly installments of $30,000[,] plus interest for the remaining four

years."[3] ECF No. 1-1 at ¶ 49. The total interest payment would have been $102,481.25. *Id.*;

ECF No. 16-2. The Settlement Agreement recognized that Plaintiff was entitled under 31 U.S.C.

§ 3730(d) to a share of the proceeds paid under the Agreement, and that the United States would

pay to Plaintiff 17 percent of each payment FMC remitted under the Agreement.[4][5] ECF No. 16-

2 at 2, 4.

---

[3] The Settlement Agreement is limited to "Covered Conduct," defined as follows: "certain civil
claims against FMC arising from FMC's submission of false or fraudulent claims in violation of
the [False Claims Act], during the period of January 1, 2006 until May 5, 2016. Specifically, the
United States contends, as alleged in the United States' Complaint in Intervention, that (1) FMC
provided incentive compensation to its physician-owners and employees that directly took into
account the volume or value of the physicians' own referrals of laboratory tests and other
ancillary services in violation of the physician self-referral law . . . , and knowingly submitted
claims to the Medicare program for those tests and ancillary services; and (2) FMC knowingly
billed Medicare and Tricare for medically unnecessary laboratory services." ECF No. 16-2 at 2.
[4] At oral argument, counsel for Defendants asserted several arguments for the first time that are
not raised in the Motion to Dismiss. These arguments primarily concern Plaintiff's standing to
sue on the Settlement Agreement, and include contentions that Plaintiff waived and/or released
claims by signing the Settlement Agreement. Upon review of the Settlement Agreement, it is not
apparent to the court that Plaintiff lacks standing to bring this lawsuit, or that by entering the
Settlement Agreement she waived and/or released the claims that she asserts in this lawsuit.
Defendants may pursue these theories on a motion for summary judgment, if appropriate.
[5] At or around this time, Plaintiff also entered into a settlement agreement with the United States
and the Serbin Defendants ("Serbin Settlement Agreement"). ECF No. 4-5. The Serbin
Settlement Agreement resolves the same claims that are the subject of the Settlement Agreement
and requires that the Serbins pay the sum of $443,000 to the United States, on terms more
specifically set forth in the agreement. The Serbin Settlement Agreement is likewise limited to
"Covered Conduct," the definition of which is substantively identical to the definition included

As part of the Settlement Agreement, FMC contemporaneously executed a Corporate

Integrity Agreement ("CIA") with the Office of the Inspector General of the United States

Department of Health and Human Services.  ECF No. 1-1 at ¶ 52; ECF No. 4-6. The CIA

required FMC to restructure.  As part of the restructuring, shortly before the execution of the

Settlement Agreement, Defendant Stahl agreed to buy FMC, and thereby replaced Defendant

Serbin as FMC's chief executive office.  ECF No. 1-1 at ¶¶ 11, 12, 54.

<u>Present Action</u>

Plaintiff now alleges that FMC intentionally thwarted its obligations to her and the

United States under the Settlement Agreement by ceasing to make payments after ten months,

while FMC's members "established 'new' medical practices, often in the same locations seeing

the same patients, operating under with new corporate entities [sic]."  ECF No. 1-1 at ¶ 3.

Plaintiff alleges that Defendants never intended for FMC to honor the Settlement Agreement.  *Id.*

at ¶ 5.  Plaintiff further alleges that although FMC represented that its business had declined

since the government's intervention, "FMC had ample financial resources when the Settlement

Agreement was negotiated and executed," and, furthermore, "FMC warranted it was currently

solvent and would remain solvent at least until the completion of the Settlement Agreement."  *Id.*

at ¶¶ 56, 78; ECF No. 16-2 at 12.

Plaintiff asserts that FMC was the largest family practice healthcare provider in

Columbia, South Carolina, serving approximately 40,000 patients at six office locations with an

estimated annual revenue of $18.97 million and a portfolio of commercial real estate worth

several million dollars.  ECF No. 1-1 at ¶¶ 10, 58.  Plaintiff alleges that almost immediately after

---

in the Settlement Agreement, and contains provisions that are substantively identical to the ones
discussed in note four *supra*.  *See* ECF No. 4-5 at 3, 6, 10-11, 17.

the execution of the Settlement Agreement, FMC's member physicians wound up the practice. On March 15, 2018, Defendant Serbin created Defendant Springwood Lake Primary Care, LLC, where he currently practices and to which Defendant Stahl has referred his patients. ECF No. 1-1 at ¶ 27. FMC then announced its closure on April 3, 2018, effective May 31, 2018, and its website directed FMC patients to continue to see former FMC physicians at their new practices. ECF No. 1-1 at ¶¶ 10, 68.

On July 1, 2018, FMC defaulted on the $12,889.58 monthly payment due under the Settlement Agreement. ECF No. 1-1 at ¶ 69. On July 12, 2018, the United States sent a notice of default to FMC. *Id.* at ¶ 70. Under the terms of the Settlement Agreement, FMC was required to cure its default within ten days of the date of the notice, i.e., July 23, 2018. *Id.* at ¶ 71. On July 19, 2018, Defendants Serbin and Stahl sold the location of FMC's former office in Lexington, South Carolina for over $1.3 million. However, FMC failed to cure the default then and to date has not cured the default. *Id.* at ¶¶ 72, 73.

On unspecified dates prior to the execution of the Settlement Agreement, Defendant Serbin formed the following entities: Defendant Springwood Lake Building, LLC, which owns property at 1721 Horseshoe Drive, Columbia; Defendant Southeast Professional Plaza, LLC, which owns property at 813 Leesburg Road, Columbia, which is currently for sale for $1,650,000; Defendant Midtown Building, LLC, which owns property at 1910 Gregg Street, Columbia; Defendant Saluda Point Building, LLC, which owned and, on July 19, 2018, sold property at 3630 Sunset Boulevard, West Columbia for $1,308,660; and Defendant Lake Murray Family Medicine Building, LLC, which owns property at 7611 St. Andrews Road, Irmo. ECF No. 1-1 at ¶¶ 31-35. Each of these properties served as a location for FMC's medical practice, prior to FMC's closure. *Id.* Defendants Springwood Lake Building, LLC, Southeast

Professional Plaza, LLC, Midtown Building, LLC, Saluda Point Building, LLC, and Lake Murray Family Medicine Building, LLC are hereafter referred to as the "Real Estate Defendants."

Plaintiff alleges that with the exception of Defendant Stahl, who retired and referred his patients to Defendant Serbin, and former-defendant Eric N. Hutto, M.D., who has referred his patients to former-defendant Pamela I. Brown, M.D., "FMC's former physicians continue to serve their Columbia-area patients and do so mostly in the same former FMC offices where they practiced when the Settlement Agreement was executed, but under new legal entities, most of which were formed after the Settlement Agreement was executed." ECF No. 1-1 at ¶ 74. Plaintiff alleges that FMC and its member physicians "never intended to honor the Settlement Agreement," and, rather, "intended to wind up FMC as soon as possible after execution of the Settlement Agreement and have done precisely that." *Id.* at ¶¶ 80, 81. As a result, Plaintiff contends, Defendants paid only $126,896.89 for claims worth over $30 million to the United States and Dr. Schaefer." *Id.* at ¶ 83.

On this basis, Plaintiff asserts claims for fraud in the inducement as to Defendants FMC, Serbin, and Stahl; tortious interference with contract as to Defendants Serbin, Stahl, and Amin; and civil conspiracy as to all Defendants. Plaintiff seeks compensatory damages in the form of civil penalties awarded under 31 U.S.C. § 3729 and back pay awarded under 31 U.S.C. § 3730(h); costs and attorney's fees; and punitive damages. ECF No. 1-1 at 20.

## II.     LEGAL STANDARD

### A.     Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint. *Schatz v. Rosenberg*, 943 F.2d 455, 489 (4th

Cir. 1991). While the complaint need not be minutely detailed, it must provide enough factual details to put the opposing party on fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Additionally, a complaint must contain factual content that allows the court to reasonably infer the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "Facts that are 'merely consistent with' liability do not establish a plausible claim to relief." *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). *See* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

The court must accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the party opposing the motion. *Iqbal*, 556 U.S. at 679. However, the court will not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Nathan*, 707 F.3d at 455 (quoting *Wag More Dogs, LLC v. Cozart,* 680 F.3d 359, 365 (4th Cir. 2012)). To determine plausibility, a court is to "draw on its judicial experience and common sense"; but dismissal is not warranted if the court determines that the factual allegations can "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

**B.      Federal Rule of Civil Procedure 12(b)(7)**

Under Rule 12(b)(7), a court may dismiss a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19 sets forth a two-step inquiry for a district court to determine whether a party should be joined in an action. The court must first determine whether the party is "necessary" to the action.[6] *Id.* at Fed. R. Civ. P. 19(a). If the court determines that the party is "necessary," it must then determine whether the party is "indispensable" to the action.[7] *Id.* at 19(b). *National Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of South Carolina, Inc.*, 210 F.3d 246, 249 (4th Cir. 2000). *Am. Gen. Life & Acc. Ins.*

---

[6] Rule 19(a) provides in relevant part as follows:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

[7] Rule 19(b) provides as follows:

> The factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

*Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005). "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

### III.      DISCUSSION

Defendants argue that Plaintiff fails to state a claim upon which relief may be granted, and that the court should dismiss the entire suit for Plaintiff's failure to join the United States as a party.

### A.      Pleading Deficiencies

1. Fraud in the Inducement

Plaintiff claims fraud in the inducement as to Defendants Serbin, Stahl, and FMC. "Fraud is an intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to her or to surrender a legal right." *Regions Bank v. Schmauch*, 582 S.E.2d 432, 444 (S.C. Ct. App. 2003). A plaintiff establishes liability for fraud by demonstrating the following elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*Mosely v. All Things Possible, Inc.*, 694 S.E.2d 43, 45 (S.C. App. 2010), *aff'd*, 719 S.E.2d 656 (S.C. 2011). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (observing, "Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive.").

With respect to the first three elements of the claim, Plaintiff alleges as follows.

Defendants FMC, Serbin, and Stahl represented in the Settlement Agreement that "FMC would make certain scheduled payments, and that FMC would remain solvent until those payments were made." ECF No. 1-1 at ¶ 86. These representations, regarding scheduled payments and solvency, "were material to the formation of the Settlement Agreement as they were the consideration for the release of claims against FMC." *Id.* at ¶ 87. These representations were false because "FMC defaulted after paying only 7.6 percent of the agreed settlement amount," and "FMC deliberately became insolvent in July 2018, less than one year into the five-year Settlement Agreement." *Id.* at ¶¶ 88, 89. With respect to the fourth and fifth elements of the claim, Plaintiff alleges as follows:

> Defendants FMC, Serbin, and Stahl knew their representations that FMC would make those payments and would remain solvent were false. They intended that FMC's business would be moved into other entities and that associated assets would be liquidated within one year of the execution of the Settlement Agreement, and that FMC would then be an insolvent, judgment-proof entity.
>
> Defendants FMC, Serbin, and Stahl made their false representations with the intent that Dr. Schaefer release claims against FMC in reliance on the representations.

*Id.* at ¶¶ 90, 91. Finally, as to the remaining elements regarding, ignorance, reliance, and damages, Plaintiff alleges:

> [she] was ignorant of the falsity of the representations made by Defendants FMC, Serbin, and Stahl. Dr. Schaefer had a right to rely on the truth of the representations of Defendants FMC, Serbin, and Stahl's representations [sic] regarding the Settlement Agreement. Because of her justified reliance upon Defendants FMC, Serbin, and Stahl's false representations, Dr. Schaefer lost valuable whistleblower claims against Defendant FMC and recovery of damages for her wrongful termination.

*Id.* at ¶¶ 92-94.

Defendants assert one argument. They contend that the claim must be dismissed because FMC's representations constitute mere promises, or statements as to future events, and that promises made in the course of negotiation but never performed cannot give rise to fraud. ECF No. 16-1 at 4 (citing *Davis v. Upton*, 157 S.E.2d 567, 568 (S.C. 1967)). Indeed, Defendants assert, a fraudulent representation is not actionable unless it relates "to existing or past facts." *Id.* at 5; ECF No. 33 at 2. Defendants contend that FMC's representations regarding future payments and its solvency are not actionable for the following reasons:

1. Plaintiff acknowledges that, prior to entering the Settlement Agreement, she was aware that FMC was in a declining financial situation;
2. The statement is unequivocally a promise to do something in the future; and
3. FMC made the monthly payments required by the Settlement Agreement for a number of months before it became unable to do so.

ECF No. 16-1 at 5.

In response, Plaintiff also cites *Davis* and argues that "where one promises to do a certain thing, having at the time no intention of keeping his agreement, it is a fraudulent misrepresentation of a fact, and actionable as such." ECF No. 32 at 9-10 (citing *Davis*, 157 S.E.2d at 568). Defendants and Plaintiff appear to agree that "a promise to do something in the future is fraudulent if 'such promise was part of a general plan or design, existing at the time, to induce a party to enter into a contract or act as he or she otherwise would not have acted, to his or her injury." ECF No. 16-1 at 4-5; ECF No. 32 at 10. In sum, Plaintiff asserts that her complaint adequately alleges that Defendants "promised to do a certain thing, having at the time no intention of keeping their agreement," and contends that Defendants' argument to the contrary "is no more than an implicit factual assertion," which does not provide an appropriate basis for

dismissal under Rule 12(b)(6).  In reply, Defendants argue that any claim for relief based on these allegations lies in breach of contract, not fraud.  ECF No. 33 at 3.[8]

The court finds that Plaintiff has alleged a general plan or design that existed at the time of the Settlement Agreement, and also that the representations of timely payments and solvency were made in furtherance of that plan or design.  Accordingly, Plaintiff has sufficiently alleged the requisite elements of a claim for fraud in the inducement.

The complaint alleges that FMC "had ample financial resources" when it entered into the Settlement Agreement on September 11, 2017; more importantly, FMC represented in the Settlement Agreement that it was solvent and intended to remain solvent.  ECF No. 1-1 at ¶¶ 56, 78; ECF No. 16-2 at 12.  The fact that FMC's financial health was less robust after the government intervened in the FCA Action has no bearing at this stage in light of FMC's representation regarding solvency, a representation based presumably on FMC's intimate knowledge of its own finances.  Indeed, Plaintiff alleges that FMC was a profitable entity on April 3, 2018, when it announced its closure.[9]  *Id.* at ¶¶ 68, 75.  Despite FMC's profitability, and its obligations under the Settlement Agreement, on March 15, 2018, Defendant Serbin created Defendant Springwood Lake Primary Care, LLC, to which he transferred his medical practice from FMC, and to which Defendant Stahl referred his patients.  *Id.* at ¶ 27.  Defendant Stahl

---

[8] The court notes that in South Carolina, a party induced to enter a contract by fraud will typically have a choice among causes of action and remedies.  "In circumstances, such as here, where a set of facts may give rise to claims sounding in both tort and contract, a plaintiff is permitted to 'plead and prove his entitlement to either or both,' but may recover under only one theory of liability."  *Capital Corporation of America, Inc. v. Teays River Investments, LLC*, No. 6:11–2796–HMH, 2012 WL 13006190, at *4 n.2 (D.S.C. Feb. 1, 2012) (quoting *Save Charleston Found. v. Murray*, 333 S.E.2d 60, 64 (S.C. App. 1985)).

[9] FMC allegedly represented to the United States that banks were declining to extend lines of credit because of concerns with the delay in reaching a settlement.  ECF No. 1-1 at ¶ 44.  It stands to reason that following execution of the Settlement Agreement, FMC would no longer have faced difficulty obtaining financing.

closed FMC on May 31, 2018. *Id.* at ¶ 68. On July 1, 2018, FMC defaulted on the $12,889.58

monthly payment due under the Settlement Agreement; FMC had until July 23, 2018 to cure. *Id.*

at ¶¶ 69, 71. FMC has not cured the default. *Id.* at ¶ 72.[10] While Defendant Stahl retired from

the practice of medicine after he closed FMC, Defendant Serbin continues to operate his practice.

However, Defendant Serbin operates his practice not through FMC but through Defendant

Springwood Lake Primary Care, LLC; and his practice occupies the same building as when he

operated his practice through FMC—property owned by Defendant Springwood Lake Building,

LLC. ECF No. 1-1 at ¶ 31.

      Plaintiff alleges that "Defendants' actions were without justification," "[t]heir medical

practices were and remain profitable," and, following FMC's closure, "[Defendants] continued to

see essentially the same patients, often from the same offices." ECF No. 1-1 at ¶ 99. These

allegations suggest that there was no reason to close FMC other than to avoid obligations under

the Settlement Agreement, and that FMC would have continued satisfying its obligations under

the Settlement Agreement but for the closure.[11] The timing of FMC's closure and the allegation

that FMC was profitable when it closed, coupled with the allegations that Defendant Serbin and

the other physicians affiliated with FMC, formerly named as defendants, continue to operate

profitable medical practices serving many of the same clients and occupying the same locations

as when they operated through FMC, support the claim that Defendants Serbin, Stahl, and FMC

never intended for FMC to fully satisfy its obligations under the Settlement Agreement. The

---

[10] On July 19, 2018, Defendant Saluda Pointe Building, LLC, owned by Defendants Serbin and Stahl, sold 3630 Sunset Boulevard, West Columbia, South Carolina, for $1,308,660. *Id.* at ¶ 67. The court notes that Plaintiff does not allege that FMC had an ownership interest in Defendant Saluda Pointe Building, LLC, or in any of the Real Estate Defendants.

[11] At oral argument, the court asked Plaintiff's counsel how Defendant Serbin allegedly benefited from FMC closing. Counsel responded that Defendant Serbin remains in practice making money, no portion of which must be paid to a settlement agreement.

allegations, accepted as true and viewed in a light most favorable to Plaintiff, plausibly give rise to an entitlement to relief.[12]  During oral argument, FMC's counsel suggested that unforeseen circumstances befell FMC following execution of the Settlement Agreement, which led to FMC closing.  The parties may explore this assertion during discovery, and FMC may raise the argument, and any other argument supported by the evidence, on a motion for summary judgment.  At this stage, dismissal of the claim is not warranted.

    2.   Tortious Interference in Contract

Plaintiff claims tortious interference in contract as to Defendants Serbin and Stahl.  A plaintiff must allege the following to plead a claim for tortious interference with contract: "1) the existence of a contract; 2) knowledge of the contract; 3) intentional procurement of its breach; 4) the absence of justification; and 5) resulting damages."  *Eldeco, Inc. v. Charleston County Sch. Dist.*, 642 S.E.2d 726, 731 (S.C. 2007).

Plaintiff alleges as follows.  The Settlement Agreement was a contract between herself, the United States, and Defendant FMC.  ECF No. 1-1 at ¶ 96.  Defendants Serbin and Stahl were aware of the Settlement Agreement at all relevant times.  *Id.* at ¶ 97.  Defendants Serbin and Stahl:

> intentionally procured FMC's breach of the Settlement Agreement by continuing to serve FMC's patients from FMC's offices while operating under other legal entities—often created after the Settlement Agreement's execution for the purpose of procuring a breach of the Settlement Agreement—or by referring their patients to other Defendants who continued to operate from FMC offices while operating under other legal entities.

---

[12] The allegations are susceptible of the inference that Defendants Serbin, Stahl, and FMC acted according to a scheme that was in place when the Settlement Agreement was executed, and thus are sufficient to survive Rule 12(b)(6) review.

*Id.* at ¶ 98.  Plaintiff further alleges the actions of Defendants Serbin and Stahl "were without justification. Their medical practices were and remain profitable. They continued to see essentially the same patients, often from the same offices." *Id.* at ¶ 99.  Defendants Serbin and Stahl "chose to serve those patients through new legal entities for the sole purpose of allowing FMC to avoid its obligations under the Settlement Agreement." *Id.* at ¶ 100.  Plaintiff "lost valuable whistleblower claims against Defendant FMC and recovery of damages for her wrongful termination," as a result of Defendants Serbin and Stahl's deliberate indifference to the performance of the Settlement Agreement. *Id.* at ¶ 101.

Defendants argue that Defendant Stahl is no longer practicing medicine as of his retirement; and, to the extent Plaintiff alleges Defendant Stahl referred his patients to Defendant Serbin, such actions "do[] not constitute the intentional procurement of a breach of contract." ECF No. 16-1 at 6.  With respect to Defendant Serbin, Defendants note that Plaintiff "settled and released her claims against Dr. Serbin, including her whistleblower claims and her claim for wrongful termination." *Id.* On this basis, Defendants argue that Plaintiff "cannot assert a claim against Dr. Serbin for loss of her whistleblower and wrongful termination claims, since she previously entered into an agreement specifically settling those claims with Dr. Serbin." *Id.* at 6-7.

Plaintiff asserts in response that Defendant Stahl's retirement from the practice of medicine does not negate his participation in the transfer of "FMC's medical practice to newly formed entities [so as] to avoid FMC's obligations under the Settlement Agreement." ECF No. 32 at 11.  Additionally, Plaintiff asserts, Defendant Stahl "retired and referred his own FMC patients to Serbin's 'new' practice the location of FMC's former Springwood Lake Family Practice [sic]." *Id.*  As for Defendant Serbin, Plaintiff notes that the settlement agreement into

which she entered with the Serbins is entirely different from the Settlement Agreement which is at issue here for the purpose of the claim for tortious interference with contract. *Id.* at 12.

With respect to Defendant Stahl, the court agrees with Plaintiff that the alleged tortious interference reaches beyond the practice of medicine. As chief executive officer of FMC at the time FMC closed, ECF No. 1-1 at ¶¶ 49, 54, Defendant Stahl was responsible for closing FMC, despite FMC's alleged profitability. Plaintiff's allegations support the inference that closing FMC directly resulted in FMC defaulting under the Settlement Agreement. Accordingly, Defendant Stahl is implicated in conduct giving rise to tortious interference. With respect to Defendant Serbin, the Serbin Settlement Agreement governs only the Covered Conduct, defined *supra*. ECF No. 4-5 at 3. The Covered Conduct does not include the claims advanced in this lawsuit. Accepting the complaint's allegations as true, but for Defendant Stahl closing FMC, and Defendant Serbin moving his practice from FMC and taking with him his patients, FMC would have continued to make a profit and thereby continued to meet its obligations under the Settlement Agreement. Accordingly, Plaintiff has pled a claim for tortious interference with contract as to Defendants Stahl and Serbin.

### 3. Civil Conspiracy

Plaintiff claims civil conspiracy as to all Defendants. "A civil conspiracy is a combination of two or more persons joining for the purpose of injuring and causing special damage to the plaintiff." *McMillian v. Oconee Hospital, Inc.*, 626 S.E.2d 884, 886 (S.C. 2006) (citing *Lawson v. S.C. Dep't of Corr.*, 532 S.E.2d 259, 261 (S.C. 2000)). "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 874 (S.C. 2009). "Moreover, because the quiddity of a civil conspiracy claim is the special damage

resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other

causes of action." *Id.* Accordingly, "[i]f a plaintiff merely repeats the damages from another

claim instead of specifically listing special damages as part of their civil conspiracy claim, their

conspiracy claim should be dismissed." *Id.* (citing *Vaught v. Waites*, 387 S.E.2d 91, 95 (S.C.

App. 1989)).

> Plaintiff alleges generally as follows:
>
> Defendants combined to fraudulently induce Dr. Schaefer into releasing FMC
> from her claims through a Settlement Agreement the breach of which they always
> intended to procure by concerted overt acts to transfer FMC's business to other
> legal entities and to wind up FMC, leaving FMC insolvent and in breach of the
> Settlement Agreement.
>
> The purpose of Defendants' combined actions was tortiously to injure Dr.
> Schaefer by deceiving her to release valuable claims against FMC in return for
> payments Defendants never intended for FMC to make.
>
> Defendants' actions proximately caused Dr. Schaefer to suffer special damages
> including her Relator's share of treble the damages the United States sustained
> because of Defendants' conduct, her Relator's share of statutory penalties, and
> loss of back pay.

ECF No. 1-1 at ¶¶ 103-105. However, Plaintiff alleges more specifically:

> On March 15, 2018, Defendant Serbin formed Defendant Springwood Lake
> Primary Care, LLC, to operate FMC's former Springwood Lake Family Practice
> with the connivance of Defendant Springwood Lake Building, LLC, the property
> owner of the Springwood Lake Family Practice, in turn owned by Defendant
> Serbin.
>
> On April 3, 2018, [former defendant] Mattei formed The Practice, LLC, to
> operate FMC's former Midtown Family Practice with the connivance of Midtown
> Building, LLC, the property owner of the Midtown Family Practice, in turn
> owned by Defendants Serbin and Stahl.
>
> Defendant Lake Murray Family Medicine Building, LLC, property owner of
> FMC's former Lake Murray Family Practice, in turn owned by Defendants Serbin
> and Stahl, connived with [former] [d]efendants Brown, Gajewski, Hutto, and
> Pendleton to allow [former] [d]efendants Brown, Gajewski, and Pendleton to
> operate FMC's Lake Murray Family Practice under the umbrella of Palmetto
> Primary Care Physicians.

Defendant Southeast Professional Plaza, LLC, owned by Defendants Serbin and Stahl, currently offers 813 Leesburg Road, Columbia, South Carolina for sale with an asking price of $1,650,000. Defendants Serbin and Stahl, through Defendant Southeast Professional Plaza and other entities, acquired the property in 1996 for $136,159. The property is the location of FMC's former Woodhill Family Medicine practice.

Defendant Saluda Pointe Building, LLC, owned by Defendants Serbin and Stahl, sold 3630 Sunset Boulevard, West Columbia, South Carolina, for $1,308,660 on July 19, 2018. Defendants Serbin and Stahl, through Defendant Saluda Point Building, LLC, and other entities, acquired the property in 2006 for $240,000. The property is the location of FMC's former Saluda Pointe Family Medicine practice.

*Id.* at ¶¶ 62, 63, 65-67.

Defendants argue that the claim should be dismissed because Plaintiff fails to allege special damages. ECF No. 16-1 at 8. In addition, Defendants argue that the claim should be dismissed as to the Real Estate Defendants on the basis that "there is no other allegation as to how these real estate defendants conspired with anyone to damage the Plaintiff." *Id.* Rather, Defendants assert, the complaint mentions these entities only to state that they own the facilities where some of the physicians practice. *Id.*

Plaintiff argues in response that the paragraphs quoted directly above constitute "allegations additional to the other allegations in the complaint," and that "[h]er claimed actual damages are for a specific, readily computable sum of money (17% of an FCA claim Defendant FMC confessed is worth $27 million, 17% of the associated statutory civil penalties, and twice the back-pay owed for her wrongful termination)." ECF No. 32 at 18, 19. Plaintiff additionally contends that the argument regarding special damages does not apply to the Real Estate Defendants because "the sole claim asserted against those Defendants is civil conspiracy." *Id.* at 15 n.1. Moreover, she asserts, "the complaint provides specific allegations of conspiracy" regarding these Defendants. *Id.* at 19.

The conspiracy allegations are factually thin and, on their own, likely insufficient to satisfy the notice pleading standard that requires "enough factual details to put the opposing party on fair notice of the claim and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. However, the allegations throughout Plaintiff's complaint, which she incorporates into this cause of action, describe in sufficient detail a design or scheme initially undertaken by Defendants Stahl, Serbin, and FMC, which they ultimately executed with the help of Defendant Springwood Lake Primary Care, LLC and the Real Estate Defendants. Furthermore, the conspiracy allegations describe overt acts taken to thwart FMC's obligations under the Settlement Agreement that occurred in addition to the alleged fraud and contractual interference: Defendants Serbin, Springwood Lake Primary Care, LLC, and Springwood Lake Building, LLC conspired together to operate a new practice serving FMC patients in the same location previously occupied by FMC[13]; Defendants Serbin, Stahl, and Midtown Building, LLC conspired with former defendants to operate a new practice serving FMC patients in the same location previously occupied by FMC; and Defendants Serbin, Stahl, and Lake Murray Family Medicine Building, LLC conspired with former defendants to operate a new practice serving FMC patients in the same location previously occupied by FMC. Defendants Serbin and Stahl allegedly conspired with Defendant Southeast Professional Plaza, LLC and Defendant Saluda Pointe Building, LLC to sell properties used by FMC to conduct its business.[14] Plaintiff is injured as a

---

[13] At oral argument, counsel for Springwood Lake Primary Care, LLC argued, for the first time, that Springwood could not have conspired to fraudulently induce Plaintiff to enter the Settlement Agreement because Springwood did not exist before March 2018. However, the crux of the conspiracy claim is not that Springwood and the Real Estate Defendants conspired to fraudulently induce Plaintiff, but that they participated in the conspiracy to thwart FMC's obligations under the Settlement Agreement.

[14] At oral argument, counsel for Defendants argued for the first time that conspiracy cannot lie as to many of Defendants on the basis of unitary ownership. While a corporation cannot conspire with itself, corporations certainly can and do conspire with other corporations. To the extent

result of the alleged conspiracy to thwart FMC's contractual obligations not merely due to the loss of her whistleblower and wrongful termination claims, but because she will no longer receive the benefit of her bargain, i.e., that portion of FMC's payments to the government to which she is entitled under the Settlement Agreement.

Plaintiff's allegations describe in sufficient detail the overt acts that Defendants took in furtherance of the alleged scheme designed to thwart FMC's obligations under the Settlement Agreement, and how Plaintiff was damaged as a result. Indeed, "[c]onspiracy may be inferred from the very nature of the acts done, the relationship of the parties, the interests of the alleged conspirators, and other circumstances." *Allegro, Inc. v. Scully*, 791 S.E.2d 140, 144 (S.C. 2016) (quoting *Peoples Fed. Sav. & Loan Ass'n of S.C. v. Res. Planning Corp.*, 596 S.E.2d 51, 57 (2004)). And, "[c]ivil conspiracy involves acts that are by their very nature covert and clandestine and usually not susceptible of proof by direct evidence." *Id.* (quoting *McMillan v. Oconee Mem'l Hosp., Inc.*, 626 S.E.2d 884, 886 (S.C. 2006)). As with the claims for fraudulent inducement and tortious interference with contract, Defendants may renew their argument on a motion for summary judgment, if appropriate, after the benefit of discovery.

**B.      Failure to Join the United States as a Party**

Defendants assert that because "this case arises out of the FMC Settlement Agreement between the United States of America, the Plaintiff, and Defendant FMC," and, because "[u]nder the terms of that agreement, Defendant FMC is required to make certain payments to the United States of America," FMC "is subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations," if the United States is not joined as a plaintiff in this action.

---

Defendants wish to develop an argument as to how unitary ownership precludes a finding of conspiracy liability, they may do so on a motion for summary judgment.

ECF No. 16-1 at 9. Therefore, Defendants contend, the lawsuit should be dismissed if Plaintiff is unwilling to join the United States. *Id.*

In response, Plaintiff argues that dismissal is appropriate only if the joinder of a necessary party would destroy subject-matter jurisdiction, and no such concern is at issue here because the case arises under federal question jurisdiction. ECF No. 32 at 20. Plaintiff also argues that the United States is not a necessary party under Rule 19(a)(1), and asserts that Defendants "fail to identify any possibly inconsistent obligations." *Id.* Defendants do not address the Rule 19 argument in reply.[15]

Defendants carry the burden of proof to show that the United States should be joined as a party. *Wood*, 429 F.3d at 92 (noting "the burden of proof rests on the party raising the defense to 'show that the person who was not joined is needed for a just adjudication.'") (quoting 7 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1609 (3d ed. 2001)). However, despite having an opportunity to do so in their reply, Defendants fail to provide examples of how they might incur inconsistent obligations were the United States not joined as a plaintiff. *See RPR & Assocs. v. O'Brien/Atkins Assocs., P.A.*, 921 F. Supp. 1457, 1464 (M.D.N.C. 1995) ("Defendants . . . have not met the burden of producing any evidence showing the nature of the interest or the possibility of impairment of the interest. To the extent that the State has any interest, it could protect its rights by appearing voluntarily"), *aff'd sub nom. RPR & Assocs., Inc. v. O'Brien/Atkins Assocs,, P.A.,* 103 F.3d 120 (4th Cir. 1996). Nor is it apparent to the court that the United States is a necessary party. As Plaintiff notes, should the United States choose to assert claims against Defendants at a later date based on the allegations raised in the complaint, Defendants could potentially face inconsistent adjudications, but not

---

[15] The court notes that no party addressed the Rule 19 argument at oral argument.

obligations.  *See id.* ("The rule protects against obligations that are inconsistent rather than adjudications that are inconsistent") (citing *Micheel v. Haralson*, 586 F. Supp. 169 (E.D. Pa. 1983); 3A James W. Moore et al., *Moore's Federal Practice* ¶ 19.07 (1994)).  And, "[t]he mere risk that a defendant who has successfully defended against a party may be found liable to another plaintiff in a subsequent action does not necessitate joinder of all of the parties in one action."  *Id.* (citing *Field v. Volkswagenwerk AG,* 626 F.2d 293, 302 (3d Cir. 1980)).  Defendants have not carried their burden of demonstrating that the United States is either necessary or indispensable.  Accordingly, the court denies the request for relief under Rule 12(b)(7).

## IV.     CONCLUSION

For the foregoing reasons, the Motion to Dismiss, ECF No. 16, is DENIED.

**IT IS SO ORDERED.**


/s/Margaret B. Seymour_____
Margaret B. Seymour
Senior United States District Judge

Dated: February 27, 2019
Columbia, South Carolina