IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| CATHERINE A. SCHAEFER, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | C/A No. 3:18-cv-02775-MBS |
| | ) | |
| v. | ) | |
| | ) | |
| FAMILY MEDICINE CENTERS | ) | **OPINION AND ORDER** |
| OF SOUTH CAROLINA, LLC, | ) | |
| STEPHEN F. SERBIN, M.D., | ) | |
| PETER J. STAHL, M.D., | ) | |
| BHAVESH R. AMIN, M.D., | ) | |
| SPRINGWOOD LAKE PRIMARY CARE, LLC, | ) | |
| SPRINGWOOD LAKE BUILDING, LLC, | ) | |
| SOUTHEAST PROFESSIONAL PLAZA, LLC, | ) | |
| MIDTOWN BUILDING, LLC, | ) | |
| SALUDA POINTE BUILDING, LLC, and | ) | |
| LAKE MURRAY FAMILY | ) | |
| MEDICINE BUILDING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Catherine A. Schaefer, M.D. ("Plaintiff") brought the within action asserting

claims for fraudulent inducement, tortious interference with contract, and civil conspiracy

relating to a settlement agreement she entered into with the United States government and

Defendant Family Medicine Centers of South Carolina, LLC to resolve claims arising under the

False Claims Act.  The following Defendants remain parties to the litigation: Stephen F. Serbin,

M.D. ("Defendant Serbin"); Peter J. Stahl, M.D. ("Defendant Stahl"); Family Medicine Centers

of South Carolina, LLC ("FMC"); Lake Murray Family Medicine Building, LLC; Midtown

Building, LLC; Saluda Pointe Building, LLC; Southeast Professional Plaza, LLC; Springwood

Lake Building, LLC; and Springwood Lake Primary Care, LLC (hereinafter, "Defendants").[1]

---

[1] One additional Defendant, Bhavesh R. Amin, M.D., is in default.

This matter is now before the court on the following motions: Plaintiff's motion to quash FMC's subpoena *duces tecum* to the United States, ECF No. 93; the United States' motion to quash subpoena *duces tecum*, ECF No. 129; Plaintiff's motion to amend the Parties' confidentiality order to permit disclosure of confidential materials to the United States, ECF No. 130; Defendants Serbin and Springwood Lake Primary Care, LLC's motion to compel, ECF No. 133; and the United States' motion for protective order, ECF No. 142.

## I.    BACKGROUND

On February 12, 2014, Plaintiff filed a qui tam action under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, on behalf of the United States against Defendants FMC, Serbin, and Stahl, among others, styled *United States ex rel. Schaefer v. Family Medicine Centers of South Carolina, LLC*, 3:14-cv-00382 (D.S.C. Feb. 12, 2014) (the "FCA Action").  ECF No. 4-2. Defendants Serbin and Stahl are founders, owners, and members of FMC.  On May 5, 2016, the United States filed a complaint in intervention alleging in relevant part that FMC and Defendant Serbin submitted false claims to Medicare, Tricare, and the Federal Employees Health Benefits Program.  ECF No. 4-3.  The United States ultimately filed a joint stipulation of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), citing in relevant part a settlement agreement executed on September 11, 2017 between the United States, Plaintiff, and FMC ("Settlement Agreement").[2]  *United States v. Family Medicine Centers of South Carolina, LLC*, 3:14-cv-00382 at ECF No. 114.

---

[2] As part of the Settlement Agreement, FMC contemporaneously executed a Corporate Integrity Agreement ("CIA") with the Office of the Inspector General of the United States Department of Health and Human Services.  ECF No. 1-1 at ¶ 52; ECF No. 4-6. The CIA required FMC to restructure.  As part of the restructuring, shortly before the execution of the Settlement Agreement, Defendant Stahl agreed to buy FMC, and thereby replaced Defendant Serbin as FMC's chief executive office.  ECF No. 1-1 at ¶¶ 11, 12, 54.

With respect to the Settlement Agreement, Plaintiff asserts that in April 2016, FMC offered a lump sum settlement, to which the United States responded with a counter offer. ECF No. 1-1 at ¶ 42. The following month, the United States and Plaintiff entered into an Agreement Regarding Common Interest and Disclosure of Information ("Common Interest Agreement"), which memorialized in writing their common legal interest in the FCA Action and efforts to settle that action and addressed the treatment of documents shared between the United States and Plaintiff. ECF No. 129-6. On October 24, 2016, FMC proposed a counteroffer of $1.5 million to be paid over five years in monthly installments of $25,000. Plaintiff asserts, "FMC claimed its settlement offer was based solely on ability to pay and that FMC no longer had the ability to make the lump sum payment offered in April 2016 because its business had declined since the United States' intervention." ECF No. 1-1 at ¶ 43. Also, "[o]n March 9, 2017, FMC told the United States that banks were declining to extend lines of credit because of concerns with the 'delay' in reaching a settlement and that four employees were being laid off." *Id.* at ¶ 44. The United States thereafter proposed settlement substantially similar to FMC's October 2016 counteroffer, and, on August 2, 2017, the United States and FMC agreed to the settlement. *Id.* at ¶¶ 45, 46. Plaintiff asserts "FMC claimed it was unable to pay anything to compensate [her] for her employment retaliation claim beyond the monies [she] would receive from the statutory whistleblower reward paid from the government's recovery." ECF No. 1-1 at ¶ 47. Accordingly, "[b]ased on the representations made by FMC to the United States government and the United States' agreement to an 'ability to pay' settlement, Dr. Schaefer agreed to join the proposed settlement." *Id.* at ¶ 48.

Plaintiff now alleges that FMC intentionally thwarted its obligations to her and the United States under the Settlement Agreement by ceasing to make payments after ten months,

while FMC's members "established 'new' medical practices, often in the same locations seeing the same patients, operating under with new corporate entities [sic]." ECF No. 1-1 at ¶ 3. Plaintiff further alleges that Defendants never intended for FMC to honor the Settlement Agreement. *Id.* at ¶ 5. Plaintiff alleges that almost immediately after the execution of the Settlement Agreement, FMC's member physicians wound up the practice. On March 15, 2018, Defendant Serbin created Defendant Springwood Lake Primary Care, LLC, where he currently practices and to which Defendant Stahl has referred his patients. *Id.* at ¶ 27. FMC then announced its closure on April 3, 2018, effective May 31, 2018, and its website directed FMC patients to continue to see former FMC physicians at their new practices. *Id.* at ¶¶ 10, 68. On July 1, 2018, FMC defaulted under the Settlement Agreement; FMC has not cured the default to date. *Id.* at ¶¶ 69, 72, 73. On this basis, Plaintiff asserts claims for fraud in the inducement as to Defendants FMC, Serbin, and Stahl; tortious interference with contract as to Defendants Serbin and Stahl; and civil conspiracy as to all Defendants.[3]

On January 25, 2019, Defendant FMC served the United States with a subpoena requesting "all correspondence between the Office of the U.S. Attorney's Office and Catherine A. Schaefer, M.D. or her attorneys at Richard A. Harpootlian, P.A. concerning Family Medicine Centers of South Carolina, LLC [], in the period of February 12, 2016 to the present," (the "Subpoena"). ECF No. 98-1. The Chief of the Civil Division of the United States Attorney's Office for the Western District of North Carolina thereafter sent letters to counsel for FMC objecting to the Subpoena on a variety of bases.[4] ECF No. 129 at 2. On January 28, 2019, Plaintiff filed her motion to quash

---

[3] Defendants filed a motion to dismiss the complaint, ECF No. 16, which the court denied, ECF No. 107.
[4] For purposes of this matter, the Chief of the Civil Division of the United States Attorney's Office for the Western District of North Carolina is the Acting United States Attorney for the District of South Carolina. ECF No. 129 at 2.

the Subpoena.  ECF No. 93.  FMC filed its response, ECF No. 98, to which Plaintiff filed a reply,

ECF No. 101, to which FMC filed a sur reply, ECF No. 106.  Around this time, the Parties moved

for a confidentiality order, which the court entered on February 20, 2019.  ECF No. 105.

On March 8, 2019, the United States Attorney's Office ("USAO") met with attorneys

representing FMC and conferred regarding the Government's objections to the Subpoena.  On

March 14, 2019, FMC submitted to the Government a written statement, pursuant to 28 C.F.R. §

16.22(d), narrowing the scope of the Subpoena to seek only "communication between the U.S.

Attorney's Office and Dr. Schaefer, or her attorneys, relating to the negotiations of the Settlement

Agreement and FMC's financial position," (hereinafter, "Subpoena").  ECF No. 129-4.

Defendants additionally "limit[ed] the time period for the subpoena to January 1, 2017 through

September 30, 2017." *Id.*

On March 27, 2019, the United States sent a letter to FMC objecting to the Subpoena as

narrowed by Defendants in its March 14 letter on the basis that "the documents that FMC seeks

are categorically privileged."  ECF No. 129 at 4; ECF No. 129-5.   The Government additionally

disputed FMC's contention that the United States had waived the common interest privilege "by

not preventing Schaefer from relying on her privileged communications with the United States in

this litigation," stating that "[t]he United States has no control over—or responsibility for—

Schaefer's conduct."  ECF No. 129 at 4; ECF No. 129-5 at 2.  The Government nonetheless

stated that "it would remind Schaefer of her obligation not to disclose her privileged

communications with the United States to other parties," and, finally, the Government requested

that Defendants withdraw the Subpoena.  ECF No. 129 at 4; ECF No. 129-5 at 3.  The United

States also sent Plaintiff a letter on March 27, "invoking their May 31, 2016 Common Interest

Agreement," and reminding Plaintiff "of her obligation not to disclose her privileged

communications with the government, or any work product shared by the government with her, absent written consent from DOJ counsel." ECF No. 129 at 5; ECF No. 129-7 at 1-2. The letter advised Plaintiff to "take care that she does not [disclose privileged communications with the United States] in the context of th[is] Litigation (or otherwise)." *Id.* at 5; ECF No. 129-7 at 2. The same day, Plaintiff filed a notice of supplemental authority regarding her motion to quash to which she attached copies of these two letters. ECF No. 122.

On March 29, 2019, the Government and FMC met and conferred again. On April 3, 2019, FMC informed the Government that it would not withdraw the Subpoena and, in response, the Government informed FMC of its intention to move to quash the Subpoena. The United States thereafter filed a motion to quash. ECF No. 129. The same day, Plaintiff filed a motion to amend the Parties' confidentiality order to permit disclosure of confidential documents to the United States. ECF No. 130. FMC filed a response to the Government's motion to quash on April 22, 2019, ECF No. 138, to which the Government filed a reply on April 29, 2019, ECF No. 149. FMC also filed a response to the motion to amend confidentiality order on April 22, 2019, ECF No. 137, to which Plaintiff filed a reply on April 29, 2019, ECF No. 150. On April 11, 2019, Defendants Serbin and Springwood Lake Primary Care, LLC filed a motion to compel seeking in large part the documents requested by the Subpoena. ECF No. 133. Plaintiff filed a response, ECF No. 147, to which the movants filed a reply, ECF No. 153. On April 24, 2019, the United States filed a motion for protective order, ECF No. 142, to which FMC filed a response, ECF No. 156, to which the United States filed a reply, ECF 158.

## II.    DISCUSSION

The motions to quash and motion for protective order seek protection against disclosure of the subpoenaed documents ("FCA Correspondence") on the basis of attorney client privilege,

attorney work product doctrine, and the joint prosecution or common interest privilege. The motion to compel asks the court to order Plaintiff to produce those same documents, amongst other materials. The motion to amend confidentiality order seeks to modify the existing Confidentiality Order to allow Plaintiff to disclose to the United States confidential discovery responses produced by Defendants. With the exception of the motion to amend confidentiality order, all motions herein at issue turn on the question of whether Plaintiff and the United States have waived their respective privileges.

Federal Rule of Civil Procedure 26(b)(1) authorizes discovery of any nonprivileged matter relevant to the party's claim or defense, as long as it is proportional to the needs of the case. "The scope and conduct of discovery are within the sound discretion of the district court." *Erdmann v. Preferred Research, Inc. of Georgia*, 852 F.2d 788, 792 (4th Cir. 1988). Subject to certain limitations, parties to an action may stipulate to procedures governing or limiting discovery. Fed. R. Civ. P. 29.

A subpoena served on a third party pursuant to Rule 45 is considered discovery within the meaning of the Federal Rules of Civil Procedure. Under Rule 45(d)(3), the court for the district where compliance is required must quash a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies. Fed. R. Civ. P. 45(d)(3)(A). Generally, "a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." *HDSherer LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305, 307 (D.S.C. 2013) (citations omitted).

The Federal Rules of Civil Procedure permit a court to restrict or preclude discovery when justice requires so as to protect a party or person from annoyance, embarrassment, oppression, or

undue burden or expense. Fed. R. Civ. P. 26(c)(1). The party moving for a protective order bears

the burden of establishing good cause. *HDSherer LLC*, 292 F.R.D. at 308.

A.      **The Motions to Quash**

1.  *Applicable Law*

The attorney client privilege "excludes from evidence confidential communications of a

professional nature between attorney and client, unless the client, for whose benefit the rule is

established, waives the privilege." *Floyd v. Floyd*, 615 S.E.2d 465, 482 (S.C. App. 2005)

*overturned on other grounds by* 2008 S.C. Acts 211, § 1. The attorney client privilege belongs

solely to the client and can be waived only by the client. *State v. Love*, 271 S.E.2d 110, 112

(S.C. 1980). "[T]he burden of establishing the [attorney-client] privilege rests upon the party

asserting it." *Wilson v. Preston*, 662 S.E.2d 580, 585 (S.C. 2008). Under Fourth Circuit law, the

privilege applies in the following circumstances:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the
> person to whom the communication was made (a) is a member of the bar of a
> court, or his subordinate and (b) in connection with this communication is acting
> as a lawyer; (3) the communication relates to a fact of which the attorney was
> informed (a) by his client (b) without the presence of strangers (c) for the purpose
> of securing primarily either (i) an opinion on law or (ii) legal services or (iii)
> assistance in some legal proceeding, and not (d) for the purpose of committing a
> crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the
> client.

*Hawkins v. Stables*, 148 F.3d 379, 382-83 (4th Cir. 1998) (citations omitted).[5] The Government

may also invoke the attorney client privilege in civil litigation. *United States v. Jicarilla Apache

Nation*, 564 U.S. 162, 169-70 (2011).

---

[5] Despite the Parties' reference to South Carolina law during previous motion practice, Plaintiff
asserts without opposition that federal law governs the issue of privilege. ECF No. 93 at 3.
Indeed, Defendants removed the action to this court citing federal question jurisdiction under 28
U.S.C. § 1331. *See Hawkins*, 148 F.3d at 382-83 (instructing that where the case is based upon a
federal cause of action, the court must apply "the principles of the common law as they may be

The attorney work product doctrine pertains to documents and tangible things "that are prepared in anticipation of litigation or for trial by or for [a] party or its representative (including the . . . party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The rule governing attorney work product is applicable to Government attorneys. *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975). There are two types of work product: "opinion" work product and "ordinary" (or "fact") work product. Opinion work product consists of "mental impressions, conclusions, opinions, or legal theories . . . concerning the litigation," and "is immune to the same extent as an attorney-client communication." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992) (internal quotation marks and citations omitted). Ordinary work product, or "[a]ll other documents and tangible things prepared in anticipation of litigation or for trial[,] may be discovered, but only on a showing of substantial need." *Id.* (internal quotation marks omitted); Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii) (providing that such materials may be discovered if they are otherwise discoverable under Rule 26(b)(1), and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."). The party claiming work product protection has the burden of establishing entitlement to the protection. *In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988). Even where the court orders discovery of materials protected by the work product

interpreted by the courts of the United States in the light of reason and experience"). In any event, the test under South Carolina law for determining whether the privilege exists is, for the purpose of this inquiry, substantively identical to Fourth Circuit law. The party claiming the privilege must demonstrate the following: "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his legal capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived. *Tobaccoville USA, Inc. v. McMaster*, 692 S.E.2d 526, 529-30 (S.C. 2010).

doctrine, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

Finally, Plaintiff and the United States claim the common interest privilege, which the Fourth Circuit explains as follows:

> [w]hether an action is ongoing or contemplated, whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or criminal, the rationale for the joint defense rule remains unchanged: persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims.

*In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990).[6] "[T]he joint defense or common interest rule presupposes the existence of an otherwise valid privilege, and the rule applies not only to communications subject to the attorney-client privilege, but also to communications protected by the work-product doctrine." *Id.* at 249. Furthermore, courts to consider the question have found that the common interest privilege exists between the Government and a relator. *See, e.g., United States ex rel. Purcell v. MWI Corp.,* 209 F.R.D. 21, 25, 27 (D.D.C. 2002) (holding "that in FCA cases in which the government intervenes, a joint-prosecutorial privilege exists between the government and the relator"). The privilege cannot be waived without the consent of all parties who share the privilege, and thus it serves as an exception to the general rule that disclosure of privileged information to a third party waives the privilege. *In re Grand Jury Subpoenas*, 902 F.2d at 248; *LaSalle Bank Nat. Ass'n, v. Lehman Bros. Holdings, Inc*., 209 F.R.D. 112, 116 (D. Md. 2002).

---

[6] The joint prosecution or defense privilege "first arose in the context of criminal co-defendants whose attorneys shared information in the course of devising a joint strategy for their clients' defense," and evolved into a privilege "more properly identified as the 'common interest rule.'" *Id.* at 248.

## 2. *Application*

In their respective motions to quash, Plaintiff and the United States assert attorney client privilege, work product protection, and common interest privilege as to the FCA Correspondence and seek to quash the Subpoena on those bases. FMC does not contest Plaintiff and the United States' assertions of attorney client privilege and work product protection or that the common interest privilege extends to the FCA Correspondence. *See* ECF Nos. 98, 138. FMC furthermore concedes that Plaintiff cannot unilaterally waive the common interest privilege. ECF No. 138 at 7. FMC contends that Plaintiff placed the FCA Correspondence at issue in alleging fraud in the inducement, and thereby waived the attorney client privilege and work product protection. FMC further contends that the United States "similarly waived the [common interest] privilege by failing to take steps to prevent [Plaintiff] from doing so," and asserts that the Government "at least tacitly accepted" Plaintiff's waiver of the common interest privilege. ECF No. 138 at 3.

The Subpoena seeks "all communication between the U.S. Attorney's Office and Dr. Schaefer, or her attorneys, relating to the negotiations of the Settlement Agreement and FMC's financial position" for "the period between January 1, 2017 through September 30, 2017." ECF Nos. 129-1, 129-4 at 3. Plaintiff asserts that during the FCA Action, she "always corresponded with the government through her attorneys"; the Government communicated with her through its attorneys; and the FCA Correspondence is comprised entirely of "correspondence between attorneys about a case they were jointly prosecuting on behalf of their respective clients." ECF No. 93 at 6. The Government asserts that "[a]ll communications between the USAO and Schaefer regarding settlement negotiations . . . necessarily relates to the collective decision by the United States and Schaefer to resolve the FCA Action on the terms memorialized in the final settlement agreement." ECF No. 129 at 7. Again, FMC does not contest that the FCA

Correspondence is work product and subject to attorney client privilege, and also acknowledges that "the Common Interest Agreement gave the common interest privilege to Plaintiff and the United States." ECF No. 138 at 4.

The court agrees that the FCA Correspondence qualifies for protection as work product and as privileged attorney client communications, and that both Plaintiff and the United States hold these privileges. The court further finds that the FCA Correspondence is protected by the common interest privilege. Accordingly, the court turns to FMC's arguments of waiver.

### a. *At Issue Waiver*

"The 'at issue' waiver of the attorney-client privilege occurs when the party puts 'at issue' some fact which necessarily involves an examination of the attorney's advice [or communication] to the client." *United States v. White*, 944 F. Supp. 2d 454, 459 (D.S.C. 2013) (quoting *In re Long Point Road Limited Partnership v. RTC Land Assets Trust,* 1997 WL 33344311, *3–4 (Bkrtcy. D.S.C. 1997)). The waiver is triggered where the following is satisfied:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue making it relevant to the case: and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Id.* The doctrine is "based on notions of fairness and truth-seeking" and "has been analogized to the door-opening doctrine in evidence," under which "evidence that is otherwise inadmissible may become admissible if the opposing party 'opens the door' and the evidence should be considered by the factfinder in 'fairness and completeness of the information.'" *E. Bridge Lofts Prop. Owners Ass'n, Inc. v. Crum & Forster Specialty Ins. Co.*, No. 2:14-CV-2567-RMG, 2015 WL 12831737, at *2 (D.S.C. June 11, 2015). "[I]f a [party] voluntarily injects an issue in the

case, whether legal or factual, [that party] voluntary waives, explicitly or impliedly, the attorney-client privilege." *City of Myrtle Beach v. United Nat. Ins. Co.*, No. CIV.A. 4:08-1183, 2010 WL 3420044, at *5 (D.S.C. Aug. 27, 2010). *Accord* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2016.6 (3d ed. 2010) ("When a party puts a privileged matter in issue as evidence in a case, it hereby waives the privilege as to all related privileged matters on the same subject"). The doctrine applies equally to the attorney client privilege and the work product doctrine. *IntegraMed Am., Inc. v. Patton*, 298 F.R.D. 326, 330 (D.S.C. 2014).

A plaintiff establishes liability for fraud by demonstrating the following elements: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. *Mosely v. All Things Possible, Inc.*, 694 S.E.2d 43, 45 (S.C. App. 2010), *aff'd*, 719 S.E.2d 656 (S.C. 2011). In response to Plaintiff's motion to quash, FMC argues "[t]he instant action is predicated on allegations that FMC fraudulently induced Plaintiff into the Settlement Agreement in the FCA action based on a future promise that FMC would remain solvent throughout the term of the Settlement Agreement"; and further states that "[t]he claims in this action arise out of FMC's alleged misrepresentations of its financial condition in an effort to induce Plaintiff into the Settlement Agreement." ECF No. 98 at 4, 5. FMC asserts that the "communications between the United States and Plaintiff in the FCA action go directly to each element of fraud Plaintiff will attempt to prove and FMC will attempt to refute in this action." *Id.* at 4. In reply, Plaintiff contends that "FMC, not Plaintiff, has attempted to place [the FCA correspondence] at issue by asserting Plaintiff had access to the

financial information Defendants provided to the United States during settlement discussions."

ECF No. 101 at 1-2. Plaintiff further states that she "received government lawyers' opinions and

mental impressions regarding FMC's financial disclosures but not the underlying disclosures";

and asserts, without elaboration, that she "has not revealed or otherwise placed at issue the

content of those opinions and mental impressions." ECF No. 93 at 2. Plaintiff does not engage

in a substantive defense against FMC's waiver argument, but rather contends that the point is

moot because the United States has not waived the common interest privilege. ECF No. 101 at

2.

>       For its part, the United States argues that the FCA Correspondence:

>       necessarily relates to the collective decision by the United States and Schaefer to
>       resolve the FCA Action on the terms memorialized in the final settlement
>       agreement. Those communications thus reflect the mental impressions, internal
>       deliberations, and negotiating strategies of counsel for the United States regarding
>       the settlement discussions and the terms of the settlement agreement, as well as
>       work product of the United States (including information related to the
>       government's assessment of FMC's ability to pay various potential settlement
>       amounts).

ECF No. 129 at 7. The United States does not take a position as to whether Plaintiff has placed

communications between herself and the USAO at issue in this litigation, and asserts that in any

event the Government has not placed those communications at issue. *Id.* at 7-8.

>       In the complaint, Plaintiff alleges as follows:

>       FMC claimed its settlement offer was based solely on ability to pay and that FMC
>       no longer had the ability to make the lump sum payment offered in April 2016
>       because its business had declined since the United States' intervention.

>       On March 9, 2017, FMC told the United States that banks were declining to
>       extend lines of credit because of concerns with the "delay" in reaching a
>       settlement and that four employees were being laid off.

ECF No. 1-1 at ¶¶ 43, 44.

Notably, FMC claimed it was unable to pay anything to compensate Dr. Schaefer for her employment retaliation claim beyond the monies Dr. Schaefer would receive from the statutory whistleblower reward paid from the government's recovery.

Based on the representations made by FMC to the United States government and the United States' agreement to an "ability to pay" settlement, Dr. Schaefer agreed to join the proposed settlement.

*Id.* at ¶¶ 47, 48.

The Settlement Agreement was a contract under which Defendants FMC, Serbin, and Stahl represented that FMC would make certain scheduled payments, and that FMC would remain solvent until those payments were made.

Those representations were material to the formation of the Settlement Agreement as they were the consideration for the release of claims against FMC.

Defendants FMC, Serbin, and Stahl's representations that FMC would make those payments was false. FMC defaulted after paying only 7.6 percent of the agreed settlement amount.

FMC deliberately became insolvent in July 2018, less than one year into the five-year Settlement Agreement.

*Id.* at ¶¶ 86-89.

The complaint supports two theories of fraud: FMC's representations regarding its financial health and ability to pay a settlement award; and representations made in the Settlement Agreement regarding solvency and timely payments.[7] The court agrees with FMC that the first theory of fraud implicates representations made by the Government to Plaintiff's attorneys. Plaintiff denies that she had "access to the financial information FMC provided to the government," and asserts that she "received government lawyers' opinions and mental impressions regarding FMC's financial disclosures, not the underlying disclosures." ECF No. 93

---

[7] In its order denying Defendants' motion to dismiss, the court ruled that Plaintiff states a claim for fraud in the inducement in that she "has alleged a general plan or design that existed at the time of the Settlement Agreement, and also that the representations of timely payments and solvency were made in furtherance of that plan or design." ECF No. 107 at 14.

at 7. Indeed, the Government states in its motion that the FCA Correspondence includes "information related to the government's assessment of FMC's ability to pay various potential settlement amounts." ECF No. 129 at 7. Had Plaintiff received the financial disclosures, she would not have had to rely on the Government's interpretation of them. However, Plaintiff asserts she did not receive the underlying documents and that her attorneys did not negotiate directly with FMC's attorneys. Therefore, Plaintiff necessarily relied on the Government to convey the status of FMC's financial situation and ability to pay.

In her complaint, Plaintiff refers to a communication exchanged expressly between the Government and FMC, ECF No. 1-1 at ¶ 44, and a representation expressly made by FMC to the Government, *id.* at ¶ 48. In two other instances, Plaintiff alleges representations that FMC made regarding its financial health, *id.* at ¶¶ 43, 47. In light of Plaintiff's assertions regarding the lack of her attorneys' direct involvement in settlement negotiations with FMC, the court infers that Plaintiff learned of the alleged representations from the Government. Plaintiff asserts these four discrete allegations in support of her claim that FMC fraudulently induced her to enter the settlement agreement by misrepresenting its financial position; therefore, the court finds that Plaintiff has put at issue FMC's representations regarding its financial position as conveyed by the Government to Plaintiff's attorneys. However, this waiver is narrow. Plaintiff asserts no allegations implicating her attorneys' opinions or impressions, or communications regarding settlement strategy. *Federal Election Com'n v. Christian Coalition*, 178 F.R.D. 61, 74 (E.D. Va. 1998) (discussing subject matter waiver). And, as discussed below, Plaintiff cannot waive the Government's privileges.

The final matter before turning to FMC's second waiver argument concerns the FCA Correspondence that constitutes work product. Plaintiff states in her motion to quash that the

16

work product shared between her attorneys and the Government's attorneys in the FCA Action "consisted almost entirely of attorney thoughts, opinions, and mental impressions," and "[t]o the extent some fact was buried within that work product, it is ordinary work product." ECF No. 93 at 6. Plaintiff further argues that "[a]ny facts related to the FMC Settlement provided by the government to Dr. Schaefer would be facts obtained from FMC," and "[t]hose facts would already be in FMC's possession." *Id.* FMC does not respond to Plaintiff's assertions regarding work product, or otherwise discuss the difference between fact and opinion work product as it pertains to the FCA Correspondence. *See generally* ECF Nos. 98, 106, 138. For the reasons above stated, the court finds as to opinion work product that Plaintiff has waived her protection with respect to FMC's representations regarding its financial position as conveyed by the Government to Plaintiff's attorneys. The court otherwise finds no waiver of opinion work product. With respect to the FCA Correspondence that constitutes fact work product, the court finds that FMC has not shown a substantial need for the materials to prepare its defense to the fraud claim and has not shown that it cannot, without undue hardship, obtain the equivalent materials by other means.

### b. <u>Waiver of Common Interest Privilege</u>

FMC concedes that Plaintiff cannot unilaterally waive the common interest privilege, and argues instead that the United States waived its privilege by "sit[ting] idly by while Plaintiff commenced this action through a Complaint that undeniably places her discussions with the government 'at issue.'" [8] ECF No. 138 at 7. In support of this position, FMC asserts that the

---

[8] In its March 14 letter, FMC asserted that the Government has waived its common interest privilege in the FCA Correspondence as follows. The USAO "is now aware of the allegations and representations advanced by Dr. Schaefer in this lawsuit, which by her own admission, indicate that she solely relied on the information communicated by the government regarding FMC's financial status when deciding to execute the Settlement Agreement"; "[i]f the

United States "has taken no actions to prevent Plaintiff from pursuing her claims or to intervene in this action to protect privileged information." *Id.* at 7-8. And, while the United States sent a letter to Plaintiff warning her "not to violate the Common Interest Agreement, it did so only after Plaintiff's waiver of the privilege had already occurred." *Id.* at 8.

In response, the United States asserts that it "has in fact intervened in this action for the purpose of preventing the disclosure of its privileged information," and has "repeatedly sought to prevent the disclosure by Schaefer of the United States' privileged communications and the work-product of its counsel." ECF No. 149 at 2. For support, the United States cites its pending motion to quash and motion for protective order; quotes the March 27, 2019 letter to Plaintiff's attorneys advising that they "take care that [Plaintiff] does not [disclose privileged communications with the United States] in the context of th[is] Litigation (or otherwise)," ECF No. 129-7; and references the Common Interest Agreement, ECF No. 149 at 2. The United States further argues that FMC provides no legal support for finding that the Government "tacitly" waived its privilege.

FMC cites two out of circuit cases to support its position. In *S.E.C. v. McNaul*, 277 F.R.D. 439 (D. Kan. 2011), the court found waiver of the attorney client privilege where defendants repeatedly forfeited opportunities to assert and explain the basis for the privilege. In that case, the plaintiff served the defendants' law firm with a subpoena for production and the defendants filed a deficient motion to quash the subpoena, asserting attorney client privilege. The magistrate judge issued an order to show cause regarding the deficiencies, to which defendants failed to respond; and the magistrate judge denied the motion to quash. The

---

government continues to allow Dr. Schaefer to use this purportedly privileged information to advance her position in this lawsuit, FMC takes the position that this constitutes a waiver of any privilege that may attach to those communications." ECF No. 129 at 4.

defendants' law firm still refused to produce the subpoenaed documents and plaintiff filed a motion to compel, to which defendants did not respond. The magistrate judge granted the motion to compel, rejecting any claim of privilege absent a discussion of the nature of the documents withheld and concluding that the law firm had no independent ground on which to assert attorney client privilege because the defendants had waived the privilege. The district court affirmed the ruling. 277 F.R.D. at 441, 443 (applying Kansas law for waiver of privilege, specifically that "[a]n implied waiver may arise where a person has pursued such a course of conduct as to evidence an intention to waive a right, or where his conduct is inconsistent with any other intention than to waive it.'"). Of note, the *McNaul* case concerned the attorney client privilege, which the client alone holds. Moreover, the defendants repeatedly failed to assert or defend their claim to privilege. The other case FMC cites is no more persuasive. *See Barnette v. Folmar*, 151 F.R.D. 685, 690-91 (M.D. Ala. 1993) (discussing application of the investigatory privilege and finding the Government had waived a basis on which to object to court-ordered disclosure of documents by not raising the basis when it first had notice of the court order or on subsequent occasions).

The undisputed record shows that the United States has pursued a course of conduct consistent with its assertion of the common interest privilege. To the extent authority exists requiring the United States to intervene in a lawsuit in which its privileged information is implicated in order to preserve its privilege, the Government has done precisely that. Accordingly, the court finds no waiver of the common interest privilege and on that basis grants the motions to quash.

However, the court agrees with FMC that Plaintiff and the United States must produce detailed privilege logs in accordance with Federal Rule of Civil Procedure 26(b)(5)(A)(ii)

indicating the categories of materials that comprise the FCA Correspondence and the basis for withholding those materials.[9]  Plaintiff and the Government shall produce their privilege logs to Defendants FMC, Serbin, and Springwood Lake Primary Care, LLC within fourteen days of the date of this order.[10]

Finally, FMC contends that should the court grant the United States' motion to quash, it "must also prohibit Plaintiff from using her communications with the United States' lawyers as support for her claims"; allow Defendants "to present any evidence of information it [sic] shared with the government through the settlement negotiations"; and also "presume[] that these representations were accurate and the government made Plaintiff aware of each these [sic] representations."  ECF No. 138 at 10.  FMC asserts "[t]his is the only way to maintain a level playing field if the common interest privilege remains in force."  *Id.*  First, if the court were to rule as FMC requests, it would skew the playing field in FMC's favor.[11]  Second, the court will not render a preemptive ruling on what evidence the Parties are entitled to present under the Federal Rules, nor will the court presume the accuracy of any representation.  The Parties are still engaging in discovery and have not yet filed dispositive motions.  To the extent any Party wishes to preclude discovery of certain material, compel discovery of certain material, or argue the admissibility or persuasiveness of relevant evidence, the Federal Rules of Civil Procedure and Federal Rules of Evidence set forth the appropriate mechanisms and guidelines for doing so.

---

[9] Consistent with the Subpoena, the privilege log need encompass only the period between January 1, 2017 and September 30, 2017.

[10] FMC alone served the Subpoena. However, the FCA Correspondence is in large part the subject of Defendants Serbin and Springwood Lake Primary Care, LLC's motion to compel, discussed below, in which they also seek a privilege log.  ECF No. 133.

[11] The court notes that in consideration of the Government's privileges as discussed above, Plaintiff would first have to secure the Government's permission in the form of waiver to disclose the Government's attorneys' communications.

**B.      Motion to Compel**

Defendants Serbin and Springwood Lake Primary Care, LLC (hereinafter "Serbin Defendants") move the court for an order compelling Plaintiff to respond to five requests for production.  ECF No. 133.  The requests and Plaintiff's objections thereto are as follows:

Request for Production No. 4:

Any and all communications between Dr. Schaefer, or an agent acting on behalf of Dr. Schaefer, with the U.S. Government concerning the settlement or potential settlement of the qui tam action from January 1, 2017 through the present.

Response: Objection. Plaintiff's communication with the United States during the qui tam litigation are privileged under the joint-prosecution/common-interest privilege. That issue is currently before the Court in the pending motion to quash FMC's subpoena to the United States.

Request for Production No. 5:

Any and all communications between Dr. Schaefer, or an agent acting on behalf of Dr. Schaefer, with the U.S. Government concerning FMC's financials from January 1, 2017 through the present.

Response: Objection. Plaintiff's communication with the United States during the qui tam litigation are privileged under the joint-prosecution/common-interest privilege. That issue is currently before the Court in the pending motion to quash FMC's subpoena to the United States.

Request for Production No. 6:

Any and all communications between Dr. Schaefer and her attorneys specifically pertaining to the settlement of the qui tam action prior to the settlement of the qui tam action.

Response: Objection. Plaintiff's communication with her counsel about litigation during the pendency of that litigation are protected by the attorney-client privilege.  If Defendant Serbin disagrees he may file a motion to compel.

Request for Production No. 7:

Any and all communications between Dr. Schaefer and her attorneys specifically pertaining to FMC's financials or financial status prior to the settlement of the qui tam action.

Response: Objection. Plaintiff's communication with her counsel about litigation during the pendency of that litigation are protected by the attorney-client privilege. If Defendant Serbin disagrees he may file a motion to compel.

<u>Request for Production No. 15:</u>

Provide any and all written communications between Plaintiff and any individual concerning the settlement of this matter from May 1, 2017 through the date Plaintiff executed the Settlement Agreement. To the extent Plaintiff claims that communications are privileged, please provide a privilege log.

Response: Objection. Aside from the Settlement Agreements, which Defendants already have, and the letter dated August 18, 2017 from Dr. Schaefer's counsel to counsel for the United States and the qui tam Defendants, which is produced here with the Bates number SCAEFER_000831-000834, Plaintiff has no non-privileged written communications with anyone concerning the settlement of the qui tam matter.

Plaintiff's written communications concerning the settlement were with her counsel and, through her counsel, with counsel for the United States. Plaintiff's communications with her counsel about litigation are protected by the attorney-client privilege. If Defendant Serbin disagrees, he may file a motion to compel.

ECF No. 133-1.

In addition, Request for Production No. 11 seeks "[a]ny and all financial records for FMC that were in Dr. Schaefer or her attorneys' possession prior to the settlement of the qui tam matter." ECF No. 133-1 at 5. In response, Plaintiff produced an eight-page document with redactions of her attorneys' handwritten notes, claiming work product protection. ECF Nos. 133-1 at 5, 133-2. The Serbin Defendants ask the court to compel Plaintiff to produce an unredacted version of that document. ECF No. 133 at 4. Plaintiff has produced an unredacted version of that document to the court for the court's in camera review.

The motion to compel relies on the same arguments regarding "at issue" waiver of privilege that FMC raises in opposition to the motions to quash.[12] And, as an alternative to an

---

[12] The Serbin Defendants additionally reference an August 18, 2017 letter authored by Plaintiff's attorney and directed to the attorneys who appeared in the FCA Action, which the

order compelling production, the Serbin Defendants ask the court for an order compelling Plaintiff to produce a privilege log.

The United States filed a statement of interest pursuant to 28 U.S.C. § 517, opposing the motion to compel on the bases set forth in its motion to quash.[13] ECF No. 141. Plaintiff also filed a response opposing the motion and engaging in a more robust argument against "at issue" waiver, which does not affect the court's ruling above finding a narrow waiver. ECF No. 147.

For the reasons discussed above, the motion to compel is denied to the extent it asks the court to compel materials protected by the common interest privilege.[14] The motion is furthermore denied to the extent it asks the court to compel materials protected by the attorney client privilege and work product doctrine. However, consistent with the court's ruling regarding waiver, the motion to compel is granted with respect to communications that Plaintiff and her attorneys exchanged concerning FMC's representations regarding its financial position, which are not subject to the common interest privilege. Accordingly, within fourteen days of the

---

Serbin Defendants attach to their motion. ECF No. 133-3. The Serbin Defendants argue that in the letter Plaintiff's attorney referred to communications with the Government regarding settlement of the FCA Action and thereby waived the common interest privilege. The references are as follows: "the government insisted that Dr. Schaefer consider releasing her § 3730(h) claim and right to statutory fees and costs without receiving any compensation other than a 17 percent bounty paid over time"; "[t]he government strongly advocated that Dr. Schaefer accept its proposal notwithstanding the fact it would not and will not fully compensate her for the personal hardship she has endured as a consequence of bringing this case to the government's attention"; and Plaintiff "acceded to the government's demand to join its settlement proposal conditioned on the defendant's willingness to persuade the South Carolina Department of Labor, Licensing and Regulation (LLR) to close an inquiry stemming from a complaint filed by Dr. Serbin." However, Plaintiff cannot unilaterally waive the common interest privilege; and, any failure by the Government to protest Plaintiff's letter in August 2017 does not in and of itself constitute a waiver of the Government's privileges.

[13] The United States concurrently filed a motion for protective order, ECF No. 142, addressed below.

[14] The Serbin Defendants also ask the court to order Plaintiff to pay their fees and costs associated with the motion to compel. That request is denied.

date of this order, Plaintiff shall produce documents responsive to Requests for Production Nos. 7 and 15, consistent with this order, to the extent any such documents exist. With respect to Request for Production No. 11, the court finds following its in camera review that the redacted work product is not included in the scope of the waiver. Accordingly, the motion to compel is denied with respect to Request for Production No. 11.

Finally, as stated above, Plaintiff is ordered to produce a privilege log. In her response to the motion to compel, Plaintiff contends that "a privilege log for a request for production that seeks all attorney-client communications made during litigation is unduly burdensome *per se*," and further contends that "it would be an impossible burden for Plaintiff to itemize every communication she had with her counsel, and that her counsel had with Government counsel, at any time during a complex qui tam case that was pending for over three-and-a-half years." ECF No. 147 at 12. In light of the court's ruling regarding the narrow waiver of attorney client privilege and work product protection, the court finds that a privilege log is appropriate. However, the court construes the period between January 1, 2017 and September 30, 2017 as the relevant time period for the discovery herein at issue. Accordingly, Plaintiff shall prepare a privilege log for that time period, which may also serve as the privilege log ordered with respect to the motions to quash. The Serbin Defendants may ask the court to reconsider this ruling if they have a specific basis for asserting that discovery dating from outside of this timeframe might be subject to the waiver.

## C.      Motion for Protective Order

The United States moves for a protective order that bars Plaintiff or any attorney who represents her from disclosing to any party other than the United States the following materials:

> documents or information that constitute or reflect (i) communications between Schaefer or her agents and the United States regarding *United States, ex rel.*

*Schaefer v. Family Medicine Centers of South Carolina, LLC, et al.*, No. 3:14-CV-00382-MBS (D.S.C.) (the "FCA Action"), that are subject to the common interest privilege, or (ii) communications between Schaefer and her counsel that reflect privileged communications between Schaefer and the United States or attorney work-product of counsel for the United States.

ECF No. 142 at 1. Plaintiff consents to the motion; Defendants oppose. Defendants Stahl and FMC note that the basis for the protective order mirrors the basis for the relief the United States seeks in the motion to quash and therefore incorporate into their response the arguments they set forth in opposition to the motions to quash. ECF No. 156. The Serbin Defendants base their response on the arguments raised in support of their motion to compel. ECF No. 157.

The motion for protective order is granted for the reasons set forth in granting the motions to quash.

**D.     Motion to Amend Confidentiality Order**

Finally, Plaintiff moves to amend the Confidentiality Order that the Parties stipulated to and the court entered on February 20, 2019. ECF No. 130. Plaintiff asks specifically to amend Paragraph 5(b) of the Confidentiality Order to add "attorneys representing the United States and their legal support staff," as persons to whom materials designated as confidential may be disclosed, and to amend Paragraph 5(c) to add "attorneys representing the United States and their legal support staff," as persons to whom materials designated as "attorneys' eyes only" may be disclosed. *Id.* at 1. Defendants oppose the motion. ECF No. 137. The Fourth Circuit has not yet had occasion to consider this precise issue.

A district court has discretionary authority to modify a protective order it has previously entered "for what it deems good cause shown." *United States v. (Under Seal),* 794 F.2d 920, 928 n.6 (4th Cir. 1986) (observing in passing the court's permissible exercise of discretion, noting it had "no occasion to consider [] the district court's protective order" because the matter was not

on appeal).  *Accord SmithKline Beecham Corp. v. Synthon Pharmaceuticals, Ltd.*, 210 F.R.D. 163, 166 (M.D.N.C. 2002) (noting that courts have inherent power to modify protective orders, including protective orders arising from a stipulation by the parties) (citations omitted).  The court may consider a number of factors in determining whether to modify a protective order, including "the reason and purpose for a modification, whether a party has alternative means available to acquire the information, the type of protective order which is at issue, and the type of materials or documents which are sought."  *SmithKline Beecham*, 210 F.R.D. at 166.  The party seeking to modify a protective order bears the burden of showing good cause for the modification.  *Id.* (citations omitted).

Plaintiff states as the reason for the requested modification that she and the United States "jointly prosecuted the underlying *qui tam* action," "Defendants' alleged fraudulent inducement of the settlement of that action harmed both Plaintiff and the United States," and "[a]mendment of the Order will allow Plaintiff and the United States to discuss their interests in this litigation." ECF No. 130 at 1-2.  Defendants assert several arguments in opposition.  First, Defendants argue that Plaintiff "makes no attempt to explain why amendment of the Order is necessary [] for her to discuss the litigation with the United States' attorneys," and "does not identify specific materials covered by the Order that she needs to share with those attorneys, let alone address the question of why those materials are necessary for discussions about this case."  ECF No. 137 at 1-2. Accordingly, Defendants contend, Plaintiff fails to show good cause for her request.  Defendants further argue that Plaintiff's request contradicts the position she took in response to the motion to dismiss that the United States is not a necessary party and is capable of intervening in the lawsuit if it so chooses, and that Plaintiff fails to provide a "vital and compelling reason" to explain her reversed position.  *Id.* at 2-3.  Defendants additionally contend that the Parties stipulated to the

Confidentiality Order and that had Defendants been "aware that the Plaintiff was going to share the confidential information with the United States, Defendants may have either asserted additional objections to Plaintiff's discovery requests or maintained their objections to these discovery requests rather than voluntarily produce the confidential information." *Id.* at 3. Defendants assert that "Plaintiff should not be allowed to now expand Order [sic] after these documents have already been produced pursuant to the terms of the previous Consent Order." *Id.* Finally, Defendants assert that Plaintiff "continues to take the position that any correspondence between the Plaintiff, or her counsel, and the United States is protected from discovery under the joint prosecutorial privilege," and contend that "it seems patently unfair that Plaintiff now seeks to discuss confidential aspects of this case, including confidential documents produced by Defendants, with the United States while still asserting these communications are protected from production." *Id.* at 3-4.

Plaintiff addresses Defendants' arguments seriatim on reply. First, Plaintiff disputes that she need identify the precise documents she wishes to share with the United States; she states she seeks generally "the ability to provide documents to the United States, not the provision of a specific document." ECF No. 150 at 2. Plaintiff suggests that as Defendants have served discovery requests for Plaintiff's communications with the United States, and because communications she has exchanged with the United States since termination of the FCA Action are not privileged, Plaintiff would be required to disclose to Defendants all documents she provides to the United States: "if Defendants felt Plaintiff's disclosure was selective or misleading, they likewise would be able to provide documents." *Id.* Second, Plaintiff refutes the notion that the position she took with respect to whether the United States is a necessary party for the purpose of joinder is relevant or contrary to her request to modify the Confidentiality

Order, and states she "merely wishes to share discovery, which will permit the United States to make its own decisions regarding participation in this case." *Id.* Third, Plaintiff contends that Defendants fail to explain how "allowing disclosure to the United States could create any new basis for objecting to discovery requests," and posits that "[s]haring documents with the United States does not alter the scope of the discovery or make responsive productions more burdensome." *Id.* Plaintiff asserts that "[n]o privacy interest is impinged by providing Government attorneys documents that have already been produced to a private party's attorneys," and specifies that "Government attorneys would be subject to all terms of the Confidentiality Order." *Id.* at 2-3. Finally, with respect to Defendants' argument that the proposed modifications seem patently unfair, Plaintiff notes that under the Confidentiality Order, she cannot share with the United States confidential materials that Defendants have produced to her even if, for example, those materials "suggest FMC's financial disclosures in the *qui tam* settlement negotiations were inaccurate." *Id.* at 3. Plaintiff argues that the Confidentiality Order requires that she "stand mute when the underlying *qui tam* action was brought in the United States' name and Plaintiff was merely the Government's relator"; she contends that:

> [a] court order prohibiting the United States from learning facts about the prosecution of an underlying *qui tam* action in which the United States intervened that are known to both the *qui tam* relator and the *qui tam* defendants would contravene the intent of Congress that when the Government intervenes in qui tam action, "it shall have the primary responsibility for prosecuting the action."

*Id.* (quoting 31 U.S.C. § 3730(c)).

As a preliminary matter, the Confidentiality Order contemplates that the court may modify it "on motion of any party or any other person who may show an adequate interest in the matter to intervene for purposes of addressing the scope and terms of this Order," provided the Parties are given notice and an opportunity to be heard on the proposed modification. ECF No.

105 at 8. Additionally, the court notes that the Confidentiality Order is a blanket protective order. Courts grant blanket protective orders less deference than protective orders entered pursuant to a finding that the information is subject to Rule 26(c) protection. *SmithKline Beecham*, 210 F.R.D. at 167 (observing "[a] party's claimed reliance on [blanket protective] orders to protect confidentiality is [] less than if the party had to make an actual or particular showing of confidentiality in order to obtain the protective order") (citing *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.,* 121 F.R.D. 264, 268 (M.D.N.C. 1988)). When the modification involves a blanket protective order, "the nature of the document which is sought assumes even greater importance." *Id.* (instructing that "[t]he type of documents or information which will be revealed by the modification to the protective order directly bears on the decision to modify."). The court may also consider the nature of what makes the documents confidential or, in other words, "the reasonableness of a party's reliance on maintaining confidentiality under a protective order." *Id.* A party's reliance on a protective order to maintain the confidentiality of trade secrets is likely greater than where business information is at issue.

On its face, the good cause Plaintiff asserts appears to be based on a personal preference that she be allowed to discuss document production with the United States, which, absent greater elaboration, is not particularly compelling. The fact that Plaintiff does not describe with any specificity what documents she would share with the United States further supports this finding. Indeed, without such specification Defendants cannot explain the basis for wanting to preserve the confidentiality of the documents to the exclusion of the United States. *See SmithKline Beecham*, 210 F.R.D. at 167 (noting that "when the documents at issue do not likely involve highly confidential information, and/or the reason opposing disclosure is mainly the desire to

make litigation more difficult, opposition to modification carries less weight") (citing *United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1428 (10th Cir. 1990)).

However, the court infers from Plaintiff's motion and reply in support thereof that while the United States has chosen not to intervene in this action, it wishes to monitor discovery so as to determine whether a basis exists for alleging that FMC's financial disclosures, on which the United States purportedly relied in entering the Settlement Agreement, were inaccurate and/or less than complete. *See* ECF No. 150 at 3. The United States is not a party to this action and would not have access to Defendants' discovery responses short of intervening in this matter or initiating a collateral lawsuit and engaging in duplicative discovery.[15] However, the court merely infers this as the basis for the relief sought. Accordingly, the court denies the motion to amend. The denial is without prejudice to Plaintiff refiling, or the United States seeking relief on its own behalf, should either be able to make a more particularized showing of good cause.

## CONCLUSION

For the foregoing reasons, the motions to quash, ECF Nos. 93, 129, and motion for protective order, ECF No. 142, are granted. The motion to compel, ECF No. 133, is granted in part and denied in part. The motion to amend confidentiality order, ECF No. 130, is denied.

---

[15] As the *SmithKline Beecham* court noted, "[a] number of courts have found sufficient need for modification to arise from efforts to avoid duplicative discovery when parties in other litigation seek to obtain the discovery in concluded litigation which involved a party to their present lawsuit." 210 F.R.D. at 166. Those courts "have permitted timely intervention to obtain the discovery because of the considerable efficiency and savings of time and effort in avoiding duplicative discovery." *Id.* (citing *Beckman Industries, Inc. v. International Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992); *United Nuclear,* 905 F. 2d at 1424; *Jochims v. Isuzu Motors, Ltd.,* 148 F.R.D. 624 (S.D. Iowa 1993)). However, even when the moving party presents a legitimate reason for the proposed modification, "the movant still should show the inability to reasonably obtain the information by alternative means." *Id.*

**IT IS SO ORDERED.**


                                                /s/Margaret B. Seymour

Dated: May 16, 2019                                         Margaret B. Seymour
Columbia, South Carolina                            Senior United States District Judge